# Exhibit "1"



## AGREEMENT for AIRPORT SERVICES
## GENERAL TERMS AGREEMENT

8360 S. Durango Drive
Las Vegas, Nevada 89113
phone 702.851.7300
fax 702.851.7301
www.allegianttravel.com

This GENERAL TERMS AGREEMENT together with all ATTACHMENTS form an AGREEMENT for AIRPORT SERVICES ("Agreement") entered into by and between:

| | |
|---|---|
| having its principal office at: | Allegiant Air, LLC ("Allegiant")<br>8360 South Durango Drive, Las Vegas, Nevada 89113 |
| and<br>having its principal office at: | Airport Terminal Services, Inc. ("Service Provider")<br>111 Westport Plaza Drive, Suite 400<br>St. Louis, MO 63146 |

Allegiant and Service Provider shall each also be referred to as "Party" or collectively as "Parties".

WHEREAS, Allegiant desires to obtain certain airport services from Service Provider according to the terms and conditions set forth herein;

WHEREAS, Service Provider desires to provide such services to Allegiant according to the terms and conditions set forth herein;

NOW, THEREFORE, Allegiant and Service Provider, each in consideration of the agreements of the other and intending to be legally bound, agree as follows:

Definitions:  the following terms used throughout this Agreement shall have the following definitions:

"Attachment" or "Attachments" mean the documents bearing such title and three-letter description of location as executed by the Parties and entered into from time to time, in the form of Attachment A hereto, reflecting the location, the Services, if applicable, the Leased Equipment to which this Agreement is applicable and certain other terms and conditions.

"Delivery Receipt" means the document bearing such title the form attached to Attachment A hereto as shall be executed and delivered by Service Provider and Allegiant upon the delivery by Allegiant to Service Provider of any Leased Equipment under an Attachment.

"Leased Equipment" means the equipment as may be identified in an Attachment owned by Allegiant and leased to Service Provider under the terms of this Agreement and such term includes all manuals, unexpired warranties, records of maintenance and repair and preventive maintenance plans pertaining to such equipment as delivered by Allegiant to Service Provider and those required to be maintained and used pursuant to this Agreement.

"Return Receipt" means the document bearing such title attached to Attachment A hereto as shall be executed and delivered by Allegiant to Service Provider upon the completed return by Service Provider to Allegiant of any Leased Equipment under an Attachment.

"Services" means the services identified in an Attachment to be provided by Service Provider pursuant to the terms of this Agreement.

**ALLEGIANT000001**



AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

Section 1: Provision of Services

1.01    The Services will be performed by Service Provider in accordance with the applicable procedures and instructions of Allegiant and/or other governing rules and regulations. It is not considered necessary or possible to specify every detail of the Services, it being generally understood what Services comprise and the standards to be attained in their performance.

1.02    Service Provider agrees to provide Services to Allegiant's operations on an agreed schedule at the location(s) mentioned in the Attachments to this Agreement. Allegiant, in turn, agrees to inform Service Provider as soon as possible about any changes of schedule and/or frequencies and/or types of aircraft.

1.03    Service Provider will also provide Services to Allegiant for operations in addition to the agreed schedule at the same locations, provided that reasonable prior notice is given and the provision of such additional services will not prejudice commitments already undertaken.

1.04    In case of occasional Allegiant operations at locations which are not designated in an Attachment to this Agreement but where Service Provider maintains an airport services operation, Service Provider shall, on request, make every effort, subject to the means locally available, to furnish necessary services.

1.05    As far as possible, Service Provider will, upon request, provide to Allegiant any additional services not mentioned in the relevant Attachment. Such Services may be governed by special conditions to be agreed between Parties.

1.06    In case of multiple operations, priority shall, as far as possible, be given to aircraft operating on schedule.

1.07    It is the responsibility of Service Provider to participate in local emergency response plan(s) in order to provide support to Allegiant in the event of an emergency, including, but not limited to, forced landings, accidents, or acts of violence. Allegiant will contact Service Provider to establish the needs in an emergency and provide Service Provider its current emergency procedures. In absence of Allegiant's instructions, in part or whole, Service Provider shall follow its own emergency response plan(s).

In case of an emergency, Service Provider shall, without delay, activate its local emergency plan(s) which includes the immediate notification of Allegiant and establish open-line communications with Allegiant. Service Provider shall take all reasonable measures to assist passengers, crew, and family members and to safeguard and protect baggage in the aircraft from loss or damage in co-operation with the relevant local authorities. All documentation and information pertaining to the emergency is the property of Allegiant and shall be held confidential by Service Provider. Allegiant shall reimburse Service Provider for expenses and disbursements incurred in rendering such assistance.

Section 2: Standard of Work

2.01    Service Provider shall carry out all Services having a safety aspect (for example: load control, loading of aircraft, and handling of dangerous goods) in accordance with Allegiant's instructions and FAA-approved manuals.

In the case of absence of instructions by Allegiant, Service Provider shall follow its own standard practices and procedures provided they comply with all applicable rules and regulations.

2.02    Service Provider will carry out all other Services in accordance with Allegiant's procedures and instructions, or as mutually agreed. In the case of absence of instructions by Allegiant, Service Provider shall follow its own standard practices and procedures.

ALLEGIANT000002 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

2.03     Service Provider agrees to ensure that authorizations of specialized personnel performing Services for Allegiant are kept up-to-date. If at any time Service Provider is unable to provide authorized personnel as requested by Allegiant, Service Provider shall inform Allegiant immediately.

2.04     Allegiant shall supply Service Provider with sufficient information and instructions to enable Service Provider to perform its Services properly.

2.05     In the provision of the Services as a whole, due regard shall be paid to safety, security, local and international regulations, applicable rules and regulations, and the aforementioned request(s) of Allegiant in such a manner that delays and/or damage to Allegiant's aircraft and load are avoided and the general public is given the best impression of air transportation.

2.06     Service Provider must report to Allegiant's representative immediately all loss of or damage, threatened or actual, to aircraft and loads noticed in the course of providing Services or which in any other way comes to the knowledge of Service Provider.

2.07     The Parties shall reach mutual agreement on the quality standards for any Services, not excluding those covered by Sub-Section 2.01 above. Such quality standards for a specific location may form part of the applicable Attachments. Service Provider agrees to exercise best efforts to ensure that the agreed upon quality standards will be met.

2.08     Allegiant may, at its own cost, carry out performance, quality control & safety audit of the designated Services in the applicable Attachments. Service Provider will cooperate with Allegiant and undertake corrective action(s) required.

2.09     In the provision of Services, Service Provider shall comply with the Code of Federal Regulations (CFR) concerning: record keeping requirements, as specified in 49 CFR 1540, 1542 and 1544, Sensitive Security Information (SSI) in 49 CFR 1520, Fraud and Intentional Falsification of Records in 49 CFR 1540.103 and 18 USC 1001, Security Responsibilities of Employees and Other Persons in 49 CFR 1540.105(a), and any other applicable regulations.

## Section 3: Subcontracting of Services

3.01     Service Provider is entitled to delegate any of the agreed Services to subcontractors only with Allegiant's prior written consent, which consent may be withheld, at Allegiant's sole discretion. It is understood that if Allegiant's consent is given in such instance, Service Provider shall nevertheless remain wholly responsible to Allegiant for the proper rendering of such Services as if they had been performed by Service Provider, itself.

3.02     With respect to each location governed by this Agreement, Allegiant shall not appoint any other person, company, or organization to provide the Services which Service Provider has agreed to provide by virtue of this Agreement, except in such special cases as shall be mutually agreed between the Parties or except during such time as Service Provider's performance is impaired by an event of force majeure or during such time as Service Provider otherwise fails or refuses to perform the agreed upon Services.

## Section 4: Management and Training

4.01     Service Provider shall be responsible for the recruiting, training, supervision, and management of all employees and/or subcontractors involved in the provision of Services under this Agreement.



ALLEGIANT000003

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

4.02     Service Provider shall maintain a single point of contact for the management of all locations associated with this Agreement.

4.03     Service Provider shall maintain a single point of contact for training.

4.04     Service Provider shall be responsible for maintaining accurate training records for all employees and/or subcontractors involved in the provision of Services under this Agreement in a manner consistent with the policies and procedures of Allegiant and regulatory minimum standards.

Section 5: Allegiant's Representation

5.01     Allegiant may maintain, at its own cost, its own representative(s) at the location(s) designated in any applicable Attachments. Any representative(s) of Allegiant may inspect the Services furnished to Allegiant by Service Provider pursuant to this Agreement, advise and assist Service Provider, and render to Allegiant's passengers such assistance as shall not unduly interfere with the furnishing of Services by Service Provider.

5.02     Allegiant may, by prior written notice to Service Provider and at its own cost, engage a 3rd party or an organization ("Supervisor") to supervise the Services of Service Provider at the location(s) designated in any applicable Attachments.  Such notice shall contain a description of the service to be supervised. The Supervisor shall have the same authority as defined above in Section 5.01 as Allegiant's own representative.

5.03     Such assistance, when performed by Allegiant's representative(s) and/or Supervisor(s), will be the sole responsibility of Allegiant, unless requested by Service Provider.

Section 6: Travel

6.01     Allegiant shall provide positive-space travel on Allegiant-operated, scheduled-service flights for the senior management individual and senior training individual of Service Provider associated with the provision of Services under this Agreement when traveling for purposes associated with the provision of Services under this Agreement.

Section 7: Revenue Sharing

7.01     Service Provider acknowledges that it may have future opportunities to perform services for other organizations located at the airports designated on one or more Attachment(s) as a result of performing services for Allegiant hereunder. Service Provider shall pay to Allegiant a fee at stations where the Service Provider uses Allegiant's facilities and/or ground equipment to service other carriers in any applicable attachments. Service Provider agrees to pay to Allegiant Ten percent (10 %) of the gross revenue collected by Service Provider from providing service to any other parties at such location(s) unless otherwise mutually agreed in a specific Attachment(s).

Nothing herein will require Service Provider to use Allegiant ground equipment and/or facilities.

Section 8: Fair Practices

8.01     Neither Party to this Agreement shall disclose any information contained in this General Terms Agreement or any subsequent Attachments to outside parties without the prior written consent of the other Party, unless such information is specifically  required by applicable law or governmental regulation, in which case, the other Party will be notified accordingly (with notification in advance if possible).

**ALLEGIANT000004** 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

8.02     Both parties agrees to keep confidential all non-public information and/or documents regarding each other finances, operations, flights, passengers, sales, etc.

8.03     The provisions of this Section shall survive the termination of this Agreement.

---

Section 9: Liability, Indemnity, and Insurance

In this Section, all references to: (a) "Allegiant" or "Service Provider" shall include each of their respective parent companies, subsidiaries, affiliated companies, managers, officers, directors, employees, servants, agents, and subcontractors; (b) "performance (or breach of performance) under this Agreement" shall include performance of all obligations with respect to providing the Services and the Leased Equipment hereunder; and (c) "act or omission" shall include negligence, strict liability, breach of duty, discrimination, harassment, retaliation, wrongful termination, or any other circumstance which any third party, or employee of Service Provider or Allegiant, alleges as a basis of liability for damages against either party to this Agreement.

9.01     Service Provider shall not make any claim against Allegiant and shall defend, indemnify and hold Allegiant harmless (subject as hereinafter provided) from and against all claims, costs, damages, expenses, settlements, awards, demands, fines, assessments and liability of any kind or nature whatsoever ("Damages") including attorneys fees, court costs, costs of investigation, costs of appeal and expert witness fees, resulting from or in any manner connected with or arising out of:

(a) Service Provider's violation of any law, statute ordinance or regulation applicable to it or to the Allegiant operation for which Service Provider has responsibility under this Agreement;
(b) any breach of this Agreement by Service Provider;
(c) delay, injury, or death of persons carried or to be carried by Allegiant;
(d) injury or death of any employee of Service Provider;
(e) damage to, delay, or loss of baggage carried or to be carried by Allegiant;
(f) damage to or loss of property (including the Leased Equipment) owned or operated by, or on behalf of, Allegiant;
(g) loss or damage claimed by any employee of Service Provider for any employment-related matters, including but not limited to, wrongful termination, discrimination, retaliation, harassment, breach of contract, or any other act arising from the employment relationship between Service Provider and its employees;
(h) loss or damage claimed by any third party arising from any act or omission of Service Provider and/or from breach by Service Provider of any of its obligations under this Agreement; and
(i) loss or damage, in each case, arising from an act or omission of Service Provider in the performance (or breach of performance) under this Agreement; provided, however, that Service Provider shall, in no event, be responsible for Damages arising out of the negligence or willful misconduct by Allegiant, it's employees, agents, or assigns.

In addition, Service Provider shall not make any claim against Allegiant and shall defend, indemnify and hold Allegiant harmless (subject as hereinafter provided) from and against any legal liability for claims or suits, including attorneys fees, costs and expenses incidental thereto, in respect of or arising out of the Service Provider's (including its officers', directors', employees' and agents') use of the Leased Equipment, including, without limitation, the manufacture, selection, delivery, possession, use, maintenance, repair, operation, and/or return of the Leased Equipment at the time and in the condition required by this Agreement, except to the extent caused by Allegiant.

9.02     Allegiant shall not make any claim against Service Provider and shall defend, indemnify and hold Service Provider harmless (subject as hereinafter provided) from and against all Damages whatsoever including attorneys fees, court costs, costs of investigation, costs of appeal and expert witness fees, resulting from or in any manner connected with or arising out of:

ALLEGIANT000005

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

a) Allegiant's violation of any law, statute ordinance or regulation applicable to it or to the Service Provider's operation for which Allegiant has responsibility under this Agreement;

(b) any breach of this Agreement by Allegiant;

(c) injury or death of any employee of Allegiant;

(d) loss or damage claimed by any employee of Allegiant for any employment-related matters, including but not limited to, wrongful termination, discrimination, retaliation, harassment, breach of contract, or any other act rising from the employment relationship between Allegiant and its employees;

(e) loss or damage claimed by any third party arising from any act or omission of Allegiant and/or from breach by Allegiant of any of its obligations under this Agreement; and

(f) loss or damage, in each case, arising from an act or omission of Allegiant in the performance (or breach of performance) under this Agreement; provided, however, that Allegiant shall, in no event, be responsible for Damages to the extent caused by Service Provider.

9.03      Except as provided in Section 9.06, the indemnification provisions of this Agreement shall not be limited or restricted by any other provision of this Agreement, including but not limited to the insurance requirements.

9.04      Service Provider shall at all times maintain in effect with financially viable, reputable and industry-accepted insurers, (a) public liability and property damage insurance coverage, with respect to events occurring during the term of this Agreement and events occurring in the course of the Service Provider providing the Services and leasing the Leased Equipment hereunder and having a liability limit of not less than USD 1.5 million for any one occurrence and whereunder Service Provider shall cause its insurer to name, without limitation, Allegiant (including all those included by reference to "Allegiant" as stated in the first paragraph of this section) as additional insureds on all liability policies in connection with Services and the Leased Equipment under this Agreement; and (b) all risk insurance insuring against loss and damage to the Leased Equipment for not less than the "Agreed Value" of each item of Leased Equipment as set forth in the relevant Attachment whereunder Allegiant shall be named as sole loss payee with respect to all losses. Service Provider shall not carry a deductible or self-insurance risk under the (b) insurance greater than US $375,000.00 per occurrence.

Said liability insurance, in addition to providing coverage for its own potential liability, shall provide Service Provider with coverage for its defense and indemnity obligations to Allegiant as described in Section 9.01 above. Service Provider shall deliver to Allegiant a valid certificate of insurance and Service Provider's broker letter of assurance, each in customary form (together, the "Certificate") and a copy of wording of the insurance policy endorsement evidencing compliance coverage herewith, in each case, prior to the commencement of Services and lease of the Leased Equipment under each Attachment to this Agreement and annually, no later than five (5) days prior to policy expiration. Moreover, Service Provider shall provide the aforementioned Certificate within ten (10) days of any request by Allegiant.

All insurance protection afforded to the additional insureds and Allegiant as loss payee shall provide the same protection and coverage as is provided to the primary insured on the policy and such insurance shall be primary and not secondary to any existing insurance coverage of any additional insured. Such Certificates shall contain provisions requiring the insurer or broker to Service Provider (as applicable) to give at least 30 days prior written notice to Allegiant of any reduction in, or cancellation of, insurance coverage that has been so certified. Service Provider hereby appoints Allegiant as Service Provider's attorney-in-fact with power and authority to do all things, including, but not limited to making claims, receiving payments and endorsing documents, checks, drafts necessary or advisable to secure payments due under any policy of insurance required under this Agreement.

Service Provider agrees to maintain financial liquidity sufficient to pay any and all insurance deductibles that may become due under the terms of this agreement.

In the event Service Provider does not have sufficient resources to cover any and all of the aforementioned deductibles, Service Provider agrees to maintain an open line of credit with a financially viable, and reputable, bank, sufficient to cover any and all insurance deductibles that may become due under this agreement.

ALLEGIANT000006

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

9.05    Any obligations of indemnification and insurance under this Agreement shall survive the termination of this Agreement.

9.06    NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL OR EXEMPLARY DAMAGESARISING FROM ANY PROVISION OF THIS AGREEMENT, EVEN IF SUCH PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND EACH PARTY HEREBY RELEASES AND WAIVES ANY CLAIMS AGAINST THE OTHER PARTY REGARDING SUCH DAMAGES.

---

Section 10: Remuneration, Accounting, and Settlements

10.01    In consideration for the Services provided under this Agreement, Allegiant agrees to pay to Service Provider the charges set out in the respective Attachments. Allegiant further agrees to pay the proper charges of Service Provider and to discharge all additional expenditures incurred for providing the Services referred to in Sub-Sections 1.03, 1.04, 1.05, and 1.07.

10.02    Service Provider shall invoice Allegiant on twice monthly basis for the charges arising from the Standard Turn Rate times the number of scheduled operations that took place during the previous fifteen days 1-15 or 16-31 of the same month, from the provision of Services under this Agreement at the rates of charges set out in the appropriate Attachments. Allegiant shall authorize payment for all undisputed amounts within seven (7) working days after receipt of invoice.

10.03    Service Provider shall invoice Allegiant on twice monthly basis for the charges arising from all other services pertaining to Deicing Fluid, Deicing Services, Aircraft Grooming (Ultraclean), Overtime & delay flight charges and any other additional costs related to the scheduled operations from the provision of Services under this Agreement at the rates of charges set out in the appropriate Attachments. Allegiant shall authorize payment for all undisputed amounts within fifteen (15) days after receipt of invoice.

Invoices must include all appropriate supporting documentation. Invoices for payment shall be addressed to Allegiant as follows:

> Accounting Department, Allegiant Air,
> 8360 South Durango Drive,
> Las Vegas, Nevada 89113
> E-mail: AccountingDept@AllegiantAir.com / Fax: 702.851.7381

10.04    Allegiant shall initiate payment to Service Provider as per 10.2 and 10.3 for the charges arising from the Standard Turn Rate and other charges related to the operations that took place during the month either thru

> a) Checks, which will be mailed to:

> Airport Terminal Services, Inc..
> P.O. Box 430100
> St. Louis, MO 63143

> b) Wire transfer to the Service Provider bank account as per the following banking details;

> Citizens National Bank of Greater St. Louis
> 7305 Manchester Road
> Maple Wood, MO 63143
> ABA Number: 081015218

**ALLEGIANT000007** 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

Bank Account #: 932085901

10.05    Under no circumstances will either of the parties utilize the IATA Clearing House for any activity associated with this Agreement unless the parties agree in writing otherwise.

10.06    Service Provider shall provide a monthly record and, if applicable, payment of revenues to be shared under Section 7 of this Agreement. Service Provider shall issue credits to Allegiant. Credits shall be required for all Services rendered by Service Provider during all periods in which this Agreement or any Attachments remains in effect with respect to a particular location; even if the revenues are not collected by Service Provider until after this Agreement has been terminated.

In limitation of all of the foregoing payment provisions pertinent to the payments by Allegiant to Service Provider hereunder, Allegiant shall have the right to set-off Allegiant payments due to Service Provider with respect to any location and Attachment against any amounts Service Provider owed to Allegiant which are not paid when due.

In addition, with respect to termination of this Agreement relating to any Attachment, unless Service Provider has paid Allegiant a Security Deposit pursuant to Section 10.7 below Allegiant shall be entitled to and may withhold payment of the final thirty (30) days of charges payable to Service Provider under Section 10.02 above as security for the compliant and timely return of the Leased Equipment at the effective time of the respective termination. Upon the return to Allegiant of the Leased Equipment in a timely manner and in compliant condition and provided Service Provider is not otherwise in material breach of its obligations to Allegiant under any Attachment, Allegiant will pay Service Provider the balance of the charges owed for such terminated location and Attachment in a reasonable time frame not to exceed sixty (60) days.

10.07    In consideration for the lease of the Leased Equipment provided under this Agreement, Service Provider agrees to pay to Allegiant the rental amount and, if applicable, the security deposit set out in the respective Attachments. Service Provider agrees to pay Allegiant such other amounts, such as Agreed Value, indemnification amounts, taxes, as and when due and as otherwise set forth herein (including under Section 12). If Service Provider is required by an Attachment to provide a security deposit for the Leased Equipment, such amount shall be held by Allegiant as security for the Service Provider's obligations with respect to lease and return of the Leased Equipment. Any such security deposit shall not accrue interest and may be commingled with Allegiant's other funds and accounts.

10.08    Service Provider shall make payment to Allegiant, upon demand by Allegiant under invoice, for the rental charges for the Leased Equipment.  All other amounts due and payable by Service Provider hereunder and under the respective Attachment with respect to the Leased Equipment shall be paid within fifteen (15) days after receipt by Service Provider of Allegiant invoice.

10.09    Allegiant shall invoice Service Provider monthly with any additional charges arising from the lease of the Leased Equipment as and when arising to the extent mutually agreed by both parties. Invoices must include all appropriate supporting documentation. Invoices for payment shall be addressed to Service Provider as follows:

Airport Terminal Services, Inc.
Receipts Payable
111 Westport Plaza Drive, Suite 400
St. Louis, MO 63146

10.10    All payments to be made by Service Provider to Allegiant shall be made by check or by wire transfer pursuant to the Allegiant wire transfer instructions set forth in the respective Attachment. In limitation of all of the foregoing payment provisions pertinent to the payments by Service Provider to Allegiant hereunder, Service Provider shall have the right to set-off Service Provider's payments due to Allegiant with respect to any location and Attachment against any undisputed amounts Allegiant owed to Service Provider which are not paid when due. In case of failure of Service Provider to procure or maintain insurance required hereunder or to pay other fees,

ALLEGIANT000008 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

assessments, charges and taxes, all as specified in this Agreement, Allegiant shall have the right, but shall not be obligated, to obtain such insurance, or pay said fees, assignments, charges and taxes, as the case may be. In that event, the cost thereof shall be repayable to Allegiant upon Allegiant's demand and failure to repay the same shall constitute a default and breach of this Agreement by Service Provider. On all payments due from Service Provider to Allegiant hereunder, which are not paid as and when due, Allegiant may impose interest thereon at the rate of ten percent (10%) per annum, compounded weekly until paid.  Service Provider shall make payment for all undisputed amounts within fifteen (15) days after receipt of invoice.

10.11    Handling charges agreed upon, as detailed in Attachments respective to each location do not include disbursements that may arise made by Service Provider in connection with the services provided for Allegiant. Allegiant will reimburse such expenses to Service Provider at cost plus a five percent (5%) administrative handling fee. This shall not apply on the airport gross revenue sharing cost being charged by few airports from the Service Providers. As much as is possible, the Service Provider will direct invoices to Allegiant for processing and payment.

10.12    The charges outlined in Section 5.0 of each and every Attachment and Exhibit to this Agreement are exclusive of airport rates and/or taxes, including, but not limited to landing fees, terminal rents, concession fees, airport triturator fees, etc.  Service Provider will invoice Allegiant separately for any of said charges imposed on Service Provider.

---

Section 11: Duration, Notices, Modification, Termination, Effect of Termination

11.01    This Agreement shall be effective with respect to a particular location and specified Leased Equipment from the date specified in the respective Attachments (including the applicable Delivery Receipt, if any). It shall supersede any previous arrangements between the Parties governing the provision of Services and lease of the Leased Equipment at locations for which there are valid Attachments to this Agreement.

11.02    Any notice referred to under this Section or any notice given by one Party under this Agreement shall be in writing and in English and deemed properly given if sent by registered letter or by other means where proof of receipt or acknowledgement is obtained. In case of registered letter, notice shall be considered to be served on the date of receipt.  The notices shall be addressed as follows:

If to Allegiant:

Allegiant Air – Director Procurement Strategy
8360 S. Durango Blvd., Las Vegas, NV 89113

If to Service Provider:

Airport Terminal Services, Inc. - Contracts Administration
111 Westport Plaza Drive, Suite 400, St. Louis, MO 63146

The provisions of Section 10 relating to invoices shall be exempt from this section and shall stand on its own.

11.03    This Agreement as to any particular location shall continue in force until terminated by either Party giving one hundred twenty (120) days prior notice to the other Party. In this instance, such termination may be with or without cause.

11.04    This Agreement may be terminated by either Party at a specific location by the giving of no less than ten (10) days' advance notice to the other Party if the other Party is not in compliance with, or is in material breach of its obligations under, this Agreement and that breach or non-compliance has not been cured after being given fifteen (15) days to cure the same. The Parties further agree that breach or non-compliance by either Party under

ALLEGIANT000009 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

this Agreement with respect to any specific location constitutes breach or non-compliance by that Party under all locations and the other Party shall be entitled to terminate this Agreement as to any or all locations covered by this Agreement.

11.05    Except in the case of Section 11.04, termination by either Party of all or any part of the Services to be furnished at a specific location requires one hundred twenty (120) days prior notice to the other Party. In the event of partial termination of Services, consideration shall be given to an adjustment of charges.

11.06    Termination of this Agreement at a specific location shall effect termination of the relevant Services and the lease of the Leased Equipment unless the parties reach mutual agreement on other terms and conditions.

11.07    Either Party may terminate this Agreement at any time if the other Party becomes insolvent, makes a general assignment for the benefit of creditors, or commits an act of bankruptcy or if a petition in bankruptcy or for its reorganization or the readjustment of its indebtedness be filed by or against it, provided the petition is found justified by the appropriate authority, or if a receiver, trustee, or liquidator of all or substantially all of its property be appointed or applied for.

11.08    Both Parties shall be exempt from obligation if prompt notification is given by either Party in respect of any failure to perform its obligations under this Agreement arising from force majeure or any other cause beyond the control of either Party.

11.09    In the event of the Agreement or part thereof being terminated by notice or otherwise, such termination shall be without prejudice to the accrued rights and liabilities of either Party prior to termination.

11.10    Each of Allegiant and Service Provider shall have the right at any time to vary the charges set out in the Attachments relevant to the particular service or Leased Equipment provided by such Party; provided, however, each Party must give the other no less than one hundred twenty (120) days advance notice prior to the revised charges becoming effective. The notice shall specify the revised charges which the Party proposes to introduce, together with the date on which they are to be brought into effect.

11.11    Notwithstanding Section 11.10, when changes occur in the acquisition cost of Leased Equipment, schedule, and/or frequencies, and/or types of aircraft, other than those set out in Attachments, which affect Allegiant's or Service Provider's costs, either Party shall have the right to request an adjustment to the charges as from the date of the change provided that the Party concerned informs the other Party within thirty (30) days of the change. In the event the Parties are unable to reach agreement on a new schedule of charges after thirty days, then either Party may terminate this Agreement on sixty (60) days advance written notice.

11.12    Upon the effective date of termination at a specific location, Service Provider shall cease providing the Services and return the Leased Equipment to Allegiant in compliance with the terms of Section 12.  All accrued but unpaid amounts due and owing between the parties shall be paid in full at that time and if not, such amounts shall accrue interest at the rate of ten (10) percent per annum, compounded weekly, until paid in full. If the Leased Equipment is not returned to Allegiant's possession and control and in compliance with this Agreement at the effective time of termination, the lease of the Leased Equipment shall continue pursuant to the terms of Section

Section 12: Further Terms Relating to Leased Equipment

12.01 Lease. Allegiant hereby leases to Service Provider such Leased Equipment as may be identified in each relevant Attachment effective upon the mutual execution and delivery by the Parties of a Delivery Receipt for each Attachment for the applicable Leased Equipment. The term of the lease of the Leased Equipment is coterminous with the term that the Services are provided in the same Attachment. If Service Provider inspects the Leased Equipment prior to the receipt of such Leased Equipment, Allegiant is responsible for ensuring that all conditions

ALLEGIANT000010 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

affecting the Leased Equipment shall be in compliance with Service Provider's prior inspection or shall be rectified by Allegiant, at its sole cost and expense, prior to the commencement date of the lease. Termination of Services with respect to any Attachment shall result in the termination of the lease of the Leased Equipment under the same Attachment upon the completed and compliant return of the Leased Equipment to Allegiant. Return of the Leased Equipment to Allegiant shall be affected by the execution, delivery and exchange by the parties of a Return Receipt for the affected Leased Equipment. The availability, unavailability or mechanical status of the Leased Equipment shall not affect, in any way, the obligations of Service Provider to provide the Services under this Agreement.

12.02 Liens and Taxes. Service Provider shall keep the Leased Equipment free and clear of all levies, liens and encumbrances. Service Provider, or Allegiant at Service Provider's expense, shall report, pay and discharge when due all license and registration fees, assessments, sales, use and property taxes, gross receipts, taxes arising out of receipts from use or operation of the Leased Equipment, and other taxes, fees and governmental charges similar or dissimilar to the foregoing, together with any penalties or interest thereon, imposed by any state, federal or local government or any agency, or department thereof, upon the Leased Equipment or the purchase, use, operation or leasing of the Leased Equipment or otherwise in any manner with respect thereto and whether or not the same shall be assessed against or in the name of Allegiant or Service Provider.  Service Provider shall not be required to pay or discharge any such tax or assessment so long as it shall, in good faith and by appropriate legal proceedings, contest the validity thereof in any reasonable manner which will not affect or endanger the title and interest of Allegiant to the Leased Equipment; provided, Service Provider shall reimburse Allegiant for any damages or expenses resulting from such failure to pay or discharge.

12.03 Disclaimer of Warranties, Assignment of Warranties. Upon the execution of the relevant Attachment identifying the Leased Equipment, Service Provider does hereby accept delivery of and leases the Leased Equipment "AS IS" and "WHERE IS" subject to the following disclaimer of warranty: ALLEGIANT LEASES AND SERVICE PROVIDER TAKES THE LEASED EQUIPMENT "AS-IS, WHERE-IS." SERVICE PROVIDER ACKNOWLEDGES AND AGREES TO THE FOREGOING AND THAT (A) THE LEASED EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY AND ACCEPTABLE TO SERVICE PROVIDER, (B) SERVICE PROVIDER IS SATISFIED THAT THE LEASED EQUIPMENT IS SUITABLE FOR ITS PURPOSES, (C) ALLEGIANT IS NOT A MANUFACTURER OR A DEALER IN PROPERTY OF SUCH KIND, AND (D) ALLEGIANT HAS NOT MADE, NOR SHALL ALLEGIANT BE DEEMED TO HAVE MADE, WHETHER BY VIRTUE OF HAVING LEASED THE LEASED EQUIPMENT UNDER THIS AGREEMENT, OR HAVING ACQUIRED THE LEASED EQUPMENT, OR HAVING DONE OR FAILED TO DO ANY ACT, OR HAVING ACQUIRED OR FAILED TO ACQUIRE ANY STATUS UNDER OR IN RELATION TO THIS AGREEMENT OR OTHERWISE, AND ALLEGIANT WILL BE DEEMED TO HAVE EXPRESSLY DISCLAIMED, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE  CONDITION, VALUE, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR USE FOR ANY PARTICULAR PURPOSE OF THE LEASED EQUIPMENT OR ANY PART THEREOF, AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP WITH RESPECT TO THE LEASED EQUIPMENT OR ANY PART THEREOF, AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED (INCLUDING ANY IMPLIED WARRANTY ARISING FROM A COURSE OF PERFORMANCE OR DEALING OR USAGE OF TRADE), WITH RESPECT TO THE LEASED EQUIPMENT OR ANY PART THEREOF. Further, Lessor shall have no liability in connection with or arising out of the ownership, leasing, furnishing, performance or use of the Equipment or any special, indirect, incidental or consequential damages of any character, including, without limitation, loss of use, loss of profits, property damage or loss of productivity, whether suffered by Service Provider or any third party. Upon the execution of the relevant Attachment identifying the Leased Equipment until the Leased Equipment is returned to Allegiant in compliance herewith, Allegiant does hereby assign and transfer to Service Provider any and all assignable manufacturer warranties pertaining to the Leased Equipment. Upon return of the Leased Equipment to Allegiant, all such warranties which have not expired and which are assignable are hereby deemed re-assigned to Allegiant, without further act.

12.04 Maintenance and Repair. From and after the date of the relevant Attachment through compliant return of the Leased Equipment to Allegiant,  Service Provider shall possess, maintain, repair, use and operate the Leased

ALLEGIANT000011



AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

Equipment in compliance with all applicable laws (whether national, state or local), manufacturer recommendations and mandates, and such preventive maintenance schedules as are recommended by the manufacturer and Allegiant. Such maintenance shall be performed in a timely manner and the Leased Equipment will be maintained at all times in good operating condition. Service Provider shall maintain at all times a complete and detailed record of all maintenance, repairs, parts replacement, and warranty claims relating to each item of Leased Equipment and all incidents, and accidents involving the Leased Equipment, which record shall be in electronic format and be capable of transmission to Allegiant upon request. Allegiant shall be entitled (but not obligated) to inspect the Leased Equipment (and such records) from time to time, upon reasonable advance notice to Service Provider and Service Provider shall give its full cooperation and assistance to Allegiant in such inspections. If, during any inspection by Allegiant, the Leased Equipment is found not to be in compliance with the foregoing and/or in poor condition or in a state of disrepair, the same shall constitute an immediate breach of this Agreement by Service Provider.

12.05 Risk of Loss and Damage. Service Provider hereby assumes and shall bear the entire risk of loss and damage to the Leased Equipment from any and every cause whatsoever. No loss or damage to the Leased Equipment or any part thereof shall impair any obligation of the Service Provider under this Agreement which shall continue in full force and effect. In the event of loss or damage of any Leased Equipment, Service Provider shall, at Allegiant's option: (i) place the same in good repair, condition and working order at Service Provider's sole cost and expense and, provided Service Provider is not in breach of this Agreement, Allegiant shall make any insurance proceeds paid or payable to Allegiant under Service Provider's insurance available to Service Provider for such repair; or (ii) replace the same with new equipment and, provided Service Provider is not in breach of this Agreement, Allegiant shall make any insurance proceeds paid or payable to Allegiant under Service Provider's insurance available to Service Provider to assist with such replacement.  In the event Service Provider elects to replace damaged equipment with new equipment, such new equipment shall be titled under Allegiant Air, LLC and shall constitute leased equipment pursuant to Section 12.01 of this agreement. Service Provider shall provide to Allegiant written and prompt notice of any significant damage to the Leased Equipment accompanied by Service Provider's plans to repair the same.

12.06 Ownership and Access by Allegiant. The Leased Equipment is, and at all times shall remain, the sole and exclusive property of Allegiant and Service Provider shall have no right, title or interest therein or thereto except as expressly set forth in this Agreement. At all times, Allegiant shall have full access and unrestricted use of the Leased Equipment at each location for Aircraft maintenance and repair purposes.  Service Provider shall supply to Allegiant such keys, codes and access information as may be necessary for Allegiant to have such access and use.

12.07 Further Assurances. If Allegiant shall so request, Service Provider shall execute and deliver to Allegiant such documents as Allegiant shall deem necessary or desirable for purposes of recording or filing to protect the interest of Allegiant in the Leased Equipment including, but not limited to a UCC financing statement.  Service Provider hereby consents to the filing of a UCC financing statement by Allegiant pertaining to the Leased Equipment and each location. The Equipment will be located at the location covered by the particular Attachment and Lessee will not remove the Leased Equipment from this location without the prior written consent of Allegiant.

12.08 Return of Leased Equipment. Upon the expiration or earlier termination of this Agreement with respect to any Leased Equipment, Lessee shall:

(a) return the Leased Equipment to the possession and control of Allegiant at the location covered by the relevant Attachment and in the manner designated by Allegiant which manner shall be commercially reasonable, including, in the condition the Equipment is required to be maintained by the Lease and in such condition as will make the Leased Equipment immediately able to perform all functions for which the Leased Equipment was originally designed (or as upgraded during the time Service Provider leased the same), and immediately qualified for the manufacturer's (or other authorized servicing representative's) then-available service contract or warranty;
(b) return the Leased Equipment in good operating condition and in the same condition as delivered less normal wear and tear since delivery to Service Provider; and

ALLEGIANT000012



AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

(c) cause the Equipment to qualify for all applicable licenses or permits necessary for its operation for its intended purpose and to comply with all specifications and requirements of applicable federal, state and local laws, regulations and ordinances.
(d) upon Allegiant's request and expense, provide suitable storage, reasonably acceptable to Allegiant, for the Leased Equipment for a period not to exceed 90 days from the date of return.

Except as provided above or otherwise in an Attachment, all reasonable costs incurred in connection with any of the foregoing shall be the sole responsibility of Service Provider.  During any period of time from the expiration or earlier termination of this Agreement pertaining to a particular location until the relevant Leased Equipment is returned in accordance with the provisions hereof, Service Provider agrees to pay to Allegiant the additional per diem rent ("Holdover Rent"), as set forth in the applicable Attachment, payable promptly on demand, provided, however, that nothing contained herein and no payment of Holdover Rent hereunder shall relieve Service Provider of its obligation to return the Leased Equipment upon the expiration or earlier termination of this Agreement. No later than within ten (10) days prior to the relevant termination date of an Attachment, Allegiant shall be entitled to commence inspection of the Leased Equipment for compliance with the return conditions above. All conditions affecting the Leased Equipment not in compliance therewith shall be rectified by Service Provider, at its sole cost and expense, prior to the termination date. Notwithstanding anything to the contrary herein, if the Leased Equipment is found, upon return inspection by Allegiant, to not be in compliance with the conditions of this Section 12.08, Allegiant shall have the right, at its election, to either, (i) take possession and return of the Leased Equipment and rectify any conditions not in compliance with Service Provider's obligations under this Agreement and Service Provider shall be responsible for the cost of such rectification and shall pay Allegiant the rectification cost on demand; or (ii) require Service Provider to rectify any conditions not in compliance with Service Provider's obligations under this Agreement and charge Service Provider the applicable Holdover Rent until the Leased Equipment is returned in compliance with this Agreement.

Upon the compliant and complete return of the Leased Equipment under an Attachment, Allegiant shall execute and deliver to Service Provider a Return Receipt evidencing such return.

---

Section 13: Miscellaneous

13.01    No amendment to this Agreement shall be valid unless made in writing and signed by both Parties hereto.

13.02    This Agreement shall be governed by the laws of the State of Nevada without regard to its conflicts of law principles.

13.03    In the event of any litigation between the Parties involving the terms of this Agreement, each of the Parties hereto further agrees that any action or proceeding brought or initiated in respect of this Agreement may be brought or initiated only in the United States District Court for the State of Nevada or in any State of Nevada Court located in Clark County, Nevada, and each of the parties hereto consents to the exercise of personal jurisdiction and the placement of venue in any of such courts, in any such action or proceeding and further consents that service of process may be effected in any such action or proceeding in the manner provided in Section 14.065 of the Nevada Revised Statues or in such other manner as may be permitted by law. Each of the undersigned further agrees that no such action shall be brought against any party hereunder except in one of the courts above named.

13.04    In the event an action is taken by either Party to enforce this Agreement or resolve a dispute in connection herewith, the prevailing Party shall be entitled to recover the costs incurred with the prosecution and defense of such action, including reasonable attorney's fees.

13.05    This Agreement may not be assigned by operation of law or otherwise without the express written consent of the other Party. However, this Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the Parties hereto.

ALLEGIANT000013 

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

13.06    The relationship between Service Provider and Allegiant shall be that of an independent contractor. At no time shall Service Provider, its parents, managers, officers, directors, employees, agents, subsidiaries, and affiliated companies be deemed as an employee or agent of Allegiant.

13.07    The waiver by either Party of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach hereof.

13.08    The descriptive headings of several Sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

13.09    This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same Agreement and shall become effective when one or more counterparts have been signed by each of the Parties hereto and delivered to the other Party hereto. The Parties agree that facsimile signatures will have the same force and effect as originals.

13.10    This General Terms Agreement and any subsequent Attachments hereto and other documents delivered or to be delivered pursuant hereto or incorporated by reference herein, taken together contain the entire agreement between the Parties hereto concerning the transactions contemplated hereby and supersede all prior agreements or understandings, written or oral, between the Parties hereto relating to the subject matter hereof, there being no terms, conditions, warranties, or representations other than those contained herein. No oral representation, agreement, or understanding made by any Party hereto shall be valid or binding upon such Party or any other Party hereto.

13.11    Subject to the terms and conditions expressly set forth herein, the Parties hereto shall use their best commercially reasonable efforts to do and perform or cause to be done and performed all further acts required hereby, and in that connection shall execute and deliver all other agreements, certificates, instruments, or documents, as the other Party may reasonably request in order to promote and effectuate the intent and purpose of this Agreement. Neither Party hereto shall voluntarily undertake any course of action inconsistent with the performance or satisfaction of the requirements applicable to it set forth in this Agreement, and each Party shall promptly do all such acts and take all such measures as may be appropriate to enable it to perform as early as practicable the obligations herein required to be performed by it.

13.12    The Parties intend for this Agreement to be severable. It is mutually agreed that in the event any paragraph, subparagraph, section, subsection, sentence, clause, or phrase hereof shall be construed as illegal, invalid, or unenforceable for any reason, such determination shall in no manner affect the other paragraphs, subparagraphs, sections, subsections, sentences, clauses, or phrases hereof which shall remain in full force and effect, as if the said paragraph, subparagraph, sections, subsections, sentence, clause, or phrase so construed as illegal, invalid, or unenforceable were not originally a part hereof, and the enforceability hereof as a whole will not be affected. The Parties hereby declare that they would have agreed to the remaining parts hereof if they had known that such parts hereof would be construed as illegal, invalid, or unenforceable.

13.13    No provision of this Agreement shall be interpreted in favor of, or against, any of the Parties hereto by reason of the extent to which any such Party or its counsel participated in the drafting thereof or by reason of the extent to which any such provision is inconsistent with any prior draft hereof or thereof.

13.14    All notices required under the terms and provisions hereof shall be in English and in writing (including telecopier or similar writing) and shall be effective (a) if given by telecopier when transmitted and the appropriate confirmation received, and (b) if given by internationally recognized courier service, when received or personally delivered, addressed.


**ALLEGIANT000014**

AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

14. Financial Disclosure

Upon written request of either party, but not more frequently than once quarterly, the other party shall promptly provide the requesting party with the minimum financial data, to include audited annual financial statements, and unaudited quarterly statements, relating to its business practice, as the requesting party may reasonably request to enable the requesting party to determine the other party's ability to perform as required under this Agreement. Unaudited quarterly and audited annual financial statements shall be provided no more than thirty (30) days and ninety (90) days, respectively, after written request of either party.

---

Signed the _2nd_ day of _March_ , 20_11_
for and on behalf of _Allegiant Air, LLC_
by _Sean P. Hopkins_
its _VP, Contracts & Supply Operations_

Signature: _____

Signed the _1st_ day of _March_ , 20_11_
for and on behalf of _Airport Terminal Services, Inc_
by _SALLY A. LEIBLE_
its _President & COO_

Signature: _____

**ALLEGIANT000015** 



to AGREEMENT for AIRPORT SERVICES

ATTACHMENT A.MFE.GH.02
to AGREEMENT for AIRPORT SERVICES
GENERAL TERMS AGREEMENT



8360 S. Durango Drive
Las Vegas, Nevada 89113
phone 702.851.7300
fax 702.851.7301
www.allegianttravel.com

This ATTACHMENT A.MFE.GH.02 dated November 10, 2011 together with the GENERAL TERMS AGREEMENT dated March 2, 2011 (the "GTA") between:

|  |  |
|---|---|
| | Allegiant Air, LLC ("Allegiant" and/or "Carrier") |
| having its principal office at: | 8360 South Durango Drive, Las Vegas, NV 89113 |
| | |
| and... | Airport Terminal Services, Inc ("Service Provider") |
| having its principal office at: | 111 Westport Plaza Drive, Suite 400, St Louis, MO 63146 |

form an AGREEMENT for AIRPORT SERVICES ("Agreement") at:

McAllen-Miller International Airport (MFE)

and is effective from:    June 1, 2011 and with respect to the Ground Handling of Allegiant aircraft at McAllen-Miller International Airport, TX.

and replaces:    Annex B4.1

This Attachment A.MFE.GH.02 ("Attachment") contains, in Paragraph 1 "Handling Services" below, the listing of services to be provided under this Agreement. For the convenience of the parties, such list was copied (and uses the numbering taken) from the Standard Ground Handling Agreement of January 2008 as published by the International Air Transport Association (the "SGHA"); provided, however, to the extent that this Agreement indicates for any item in such listing below - "intentionally omitted" or "*" – such item deviates from the SGHA listing (i) in the case of "intentionally omitted" indicating that the item is not applicable to this Agreement, and (ii) in the case of "*", indicating that such task is not part of the SGHA but is particular to this Agreement. It is not intent and it is not the agreement of the parties that the SGHA is a part of, or is incorporated by reference into, this Agreement.

| Paragraph 1 | Handling Services |
|---|---|

**Section 1**    **Representation, Administration, and Supervision/Coordination**

    **1.1**    **General**

        1.1.1    ...Intentionally omitted
        1.1.2    Liaise with airport management, governmental authorities or any other applicable party(ies)
        1.1.3    Indicate that Service Provider is acting as handling agent for Allegiant to airport management, governmental authorities, or any other applicable party(ies)
        1.1.4    Inform all applicable Parties concerning movements of Allegiant's aircraft
        1.1.5*    Inform Allegiant of matters related to service

    **1.2**    **Administrative Functions**

        1.2.1    Maintain local procedures
        1.2.2    Take action on communications addressed to Allegiant
        1.2.3    Prepare, forward, file and retain for a period specified in Allegiant's policies and procedures manuals, messages/reports/statistics/documents and perform other

ALLEGIANT000016

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

administrative duties in the following areas:
- a)   station administration
- b)   customer services
- c)   ramp services
- d)   load control
- e)   flight operations
- f)   ...Intentionally omitted
- g)   co-mail services
- h)   support services
- i)   security
- j)   ...Intentionally omitted
- k)   other, as specified by Allegiant
- l)*  safety

1.2.4   Maintain Allegiant's manuals, security directives, training records, and other relevant operational documents connected with the performance of services

1.2.5   ...Intentionally omitted

1.2.6   ...Intentionally omitted

1.2.7*  Communicate pertinent information related to actions taken to Allegiant

1.2.8*  Service Provider to participate in:
- a)   the weekly station operations conference call (via telephone) / meetings
- b)   Monthly safety audits (at the local station)
- c)   Monthly safety meeting minutes (at local station)
- d)   Quarterly operations audits (at the local station)
- e)   Annual station leaders meeting (in person)
- f)   Service Provider shall also participate in all government/regulatory agency audits (i.e. FAA, TSA, etc.) Upon completion of such Service Provider shall immediately notify Allegiant of the inspection and communicate any known findings to Allegiant

**1.3    Supervision and/or Coordination of Services Contracted by Allegiant with Third Party(ies)**

1.3.1   a) Supervise
        b) Co-ordinate services contracted by Allegiant with third party(ies)

1.3.2   Ensure that the third party(ies) is informed about operational data and Allegiant's requirements in a timely manner

1.3.3   Liaise with Allegiant's designated representative

1.3.4   Verify availability and preparedness
- a)   staff
- b)   equipment
- c)   loads
- d)   documentation
- e)   services of any third party(ies) performing services for Allegiant

1.3.5   Meet aircraft upon arrival and liaise with crew

1.3.6   Decide on non-routine matters (e.g. closing of security checkpoint by TSA)

1.3.7   Verify dispatch of operational messages

1.3.8   Note irregularities and inform Allegiant (e.g. aircraft damage, customer injuries, mechanical delays, etc.)

1.3.9*  Provide Allegiant with all appropriate documentation following any irregular events

**1.4    Station Management**

1.4.1   Provide representative on behalf of Allegiant to act only in consultations and directions of Allegiant on Non-Exclusive basis

1.4.2   The Service Provider is authorized to represent Allegiant's interest with regard to resolving governmental and local authorities' matters in proper consultation with Allegiant

ALLEGIANT000017

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

1.4.3   Attend local airport meetings on behalf of Allegiant
   a)   report to the Allegiant results/contents of the meetings
   b)   Act, vote and commit on behalf of Allegiant after due consultation with Allegiant
1.4.4   The Service Provider will be authorized to
   a)   solicit
   b)   negotiate
   c)   commit services on behalf of Allegiant with proper prior approval of Allegiant, with
        expenditure/commitment limit to be specified by Allegiant
        1)   airport lounges
        2)   baggage delivery services
        3)   janitorial
        4)   newspapers delivery
        5)   laundry services
        6)   porters
        7)   Other
1.4.5   Negotiate and secure slot(s) and airport facilities, as available, on behalf of Allegiant
        after getting prior approval of Allegiant
1.4.6   Liaise with relevant local and Government authorities to ensure that all necessary
        permits and licenses are applied for, negotiated and secured in advance of each
        seasonal/operational change.
1.4.7   Perform and report (KPI - key performance indicators) quality/performance
        measurements as directed by Allegiant or outlined in the training manual
1.4.8   Handle the contents of Allegiant's company mail pouches
1.4.9*  Participate in:
   a)  Weekly station operations conference call (via telephone)
   b)  Annual station managers' meeting (in person)
        1) Allegiant to cover travel and overnight expenses
        2) Service Provider to cover any salary, wages, and/or per diem
   c)  Allegiant's ongoing Train the Trainer program
        1) Carrier to cover travel and overnight expenses
        2) Service Provider to cover any salary, wages, and/or per diem
   d)  Allegiant's online Allegiant University program

## Section 2        Customer Service

### 2.1        General

2.1.1   Inform customers and/or public about time of arrival and/or departure of Allegiant's
        aircraft
2.1.2   ...Intentionally omitted
2.1.3   When requested by Allegiant
   a)   ...Intentionally omitted
   b)   Arrange for special equipment, facilities and provide specially trained personnel, for
        assistance to
        1)   unaccompanied minors
        2)   ADA passengers and/or customers requesting wheelchair assistance
        3)   VIPs
        4)   ...Intentionally omitted
        5)   ...Intentionally omitted
        6)   ...Intentionally omitted
        7)   others, as specified by Allegiant
        8)*  Aid customer(s) requesting wheelchair assistance between agreed upon
             points on the airport premise.  Points may include but are not limited to

**ALLEGIANT000018**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

the ticket counter or curb and the aircraft for departing flights, and the aircraft and the baggage claim area for arriving flights. Aid customers with service animals to the airport's designated relief area(s) on an as needed basis

2.1.4   Assist customers when flights are interrupted, delayed or cancelled

2.1.5   ...Intentionally omitted

2.1.6   a) Notify Allegiant of complaints and claims made by Allegiant's passengers
        b) ...Intentionally omitted

2.1.7   Perform the following Baggage Service Office (BSO) duties:
        a)   process baggage irregularity reports
        b)   enter data into the baggage tracing system
        c)   maintain baggage tracing system files for period specified by Allegiant
        d)   ...Intentionally omitted
        e)   arrange for the delivery of delayed baggage to customers
        f)   handle initial and ongoing communications with customers

2.1.8   Report to Allegiant any irregularities discovered in customer processing and baggage handling

2.1.9   a) Provide
                1)   check-in position(s) (if required)
                2)   ...Intentionally omitted
                3)   ...Intentionally omitted
                4)   ...Intentionally omitted
                5)   ...Intentionally omitted
        b) ...Intentionally omitted

2.1.10  Perform on behalf of Allegiant the following sales functions
        a)   Reservations
        b)   issuance of transportation documents (itinerary)
        c)   e-ticketing as specified by Allegiant
        d)*  other services as specified by Allegiant
        e)*  Ticket counter operations/customer processing for ticket sales are to be performed according to Allegiant policy

**2.2   Departure**

2.2.1   Perform pre-flight editing

2.2.2   Check and ensure
        a)   that customer(s) is listed on the applicable flight manifest
        b)   ...Intentionally omitted
        c)*  that any balance due for the departing flight is collected
        d)*  that all customers have appropriate travel documents for domestic flights. In the event that Service Provider does not have access to information that verifies visa validity Service Provider will not have liability

2.2.3   a) Check travel documents for the flight(s) concerned
        b) Enter required customer and/or travel document information into Allegiant's and/or government system

2.2.4   a) Weigh and/or measure checked and/or cabin baggage for all flights
        b) Record baggage figures for all flights

2.2.5   Excess baggage
        a)   determine excess baggage
        b)   ...Intentionally omitted
        c)   collect excess baggage charges
        d)   ...Intentionally omitted

2.2.6   Tag checked and/or carry-on baggage for all flights

2.2.7   Transfer checked baggage to the baggage sorting area

**ALLEGIANT000019**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

    2.2.8    Transfer oversized checked baggage to the baggage sorting area
    2.2.9    ...Intentionally omitted
    2.2.10    a) Carry out Allegiant's seat allocation or selection system
        b) Issue boarding pass(es)
        c) Detach applicable flight coupons for
            1)   initial flight
            2)   ...Intentionally omitted
        d)* Collect appropriate seat allocation charges
    2.2.11    Handle
        a)   Denied Boarding process
        b)   Denied Boarding Compensation
    2.2.12    Direct customers through security to departure gate
    2.2.13    At the gate perform
        a)   check-in in accordance with item 2.2.3
        b)   check baggage
        c)   verification of travel documents
        d)   ...Intentionally omitted
        e)   handling of stand-by list
        f)   verification of cabin/carry-on baggage and checked baggage if needed
        g)   management of the boarding process
        h)   reconciliation of customer numbers with aircraft documents prior to departure
        i)   other gate functions as specified by Allegiant
    2.2.14    a) Collect
        b) Reconcile
        c) Handle and file transportation documents or other flight related documents collected from departing customers

**2.3**    **Arrival**

    2.3.1    a) Provide for opening/closing aircraft passenger doors
        b) ...Intentionally omitted
    2.3.2    Direct customers from aircraft to arrival area
    2.3.3    ...Intentionally omitted
    2.3.4*    Clean the aircraft of any contamination caused by
        a)   airsickness
        b)   bodily fluids
        c)   spilled food or drink
    2.3.5*    Dispose of trash collected by Allegiant's flight crew (when applicable)
    2.3.6*    Arrange disposal of any medical and/or international waste according to local and/or national policies and procedures (when applicable)

**2.4**    **...Intentionally omitted**

**2.5**    **...Intentionally omitted**

**Section 3**    **Ramp Services**

**3.1**    **Baggage Handling**

    3.1.1    Handle baggage in the baggage sorting area
    3.1.2    Prepare checked baggage for delivery onto flights
    3.1.3    Establish the number and/or weight of checked baggage
    3.1.4    Offload checked baggage
    3.1.5    Prioritize baggage delivery to claim area
    3.1.6    Deliver to claim area

ALLEGIANT000020

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

           a)  baggage
           b)  oversize baggage

3.1.7   …Intentionally omitted

3.1.8   Handle crew baggage

3.1.9*  Maintain a safe walkway between the airport and Allegiant's aircraft for loading/unloading passengers by moving/removing:
           a)   ground service equipment (GSE)
           b)   foreign objects
           c)   other items as needed

## 3.2   Marshalling

3.2.1   a)  Provide marshalling at arrival and/or departure
       b)  …Intentionally omitted

## 3.3   Parking

3.3.1   a)  …Intentionally omitted
       b)  Position and/or remove wheelchocks

3.3.2   Position and/or remove
       a)  …Intentionally omitted
       b)  …Intentionally omitted
       c)  …Intentionally omitted
       d)  …Intentionally omitted
       e)  …Intentionally omitted
       f) other items as specified (e.g. safety cones and other equipment from time-to-time)

3.3.3   a)  Provide
       b)  …Intentionally omitted
       c)  Operate ground power unit(s)

## 3.4   Cooling and Heating

3.4.1   a)  Provide
       b)  Arrange for
       c)  Operate cooling unit

3.4.2   a)  Provide
       b)  Arrange for
       c)  Operate heating unit

## 3.5   Ramp to Flight Deck Communication

3.5.1   Provide headsets (headsets are needed where pushback and/or deicing is required for Allegiant's aircraft)

3.5.2   Perform ramp to flight deck communications
       a)   during tow-in and/or push-back
       b)   during engine starting
       c)   for other purposes

## 3.6   Loading and Unloading

3.6.1   a)  Provide
       b)  Arrange for
       c)  Operate
            1)   customer steps/boarding ramp
            2)   …Intentionally omitted
            3)   loading bridges for the passenger loading/unloading process

3.6.2   …Intentionally omitted

3.6.3   a)  Provide equipment for loading and/or unloading (belt loader)

**ALLEGIANT000021**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES -- GENERAL TERMS AGREEMENT

             b)  ...Intentionally omitted

3.6.4    a) Provide delivery and pick-up of
- 1) baggage
- 2) mobility devices at aircraft doors or other agreed points to be specified by Allegiant

             b)  ...Intentionally omitted

3.6.5    a) Provide or
       b) Arrange for equipment and transport of
- 1) baggage
- 2) ...Intentionally omitted
- 3) ...Intentionally omitted
- 4) documents
- 5) company mail between agreed points on the airport

3.6.6    Load – Unload
       a) Unload aircraft, returning lashing materials to Allegiant
       b)  Load and secure loads in the aircraft
       c) ...Intentionally omitted

3.6.7    Redistribute Loads in aircraft

3.6.8    Open, close and secure aircraft hold doors
       a) aircraft lower deck
       b) aircraft main deck

3.6.9    a) Provide or
       b) Arrange for ballast, if requested

3.6.10  a) Provide safeguarding of all loads requiring special handling (e.g. valuables, fragile items) during
- 1) loading/unloading
- 2) transport between aircraft and designated points on the airport

             b)  ...Intentionally omitted

3.6.11* Utilize front and aft boarding as part of the passenger loading/unloading process

## 3.7    Starting

3.7.1    a) Provide
       b) ...Intentionally omitted
       c) Operate air start unit, if requested

## 3.8    Safety Measures

3.8.1    a) Provide protective equipment
       b) Arrange for fire-fighting
       c)*  Operate fire extinguishers

3.8.2    Perform safety/ground damage inspection
       a) immediately upon arrival
       b) immediately prior departure and
- 1) doors and panels
- 2) Other inspection items as specified by Allegiant

       c)* communicate results to the flight crew or Allegiant's designated representative

## 3.9    Moving of Aircraft

3.9.1    a) Provide or tow-in and/or push-back tractor (if applicable)
       b) ...Intentionally omitted

3.9.2    a) Towbar to be provided by Allegiant
       b) ...Intentionally omitted
       c) Store and maintain towbar(s) provided by Allegiant

3.9.3    a) Tow in and/or push back aircraft (as needed)

**ALLEGIANT000022**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

        b) Tow aircraft between other agreed points
        c) ...Intentionally omitted
        d) Provide wing-walker(s) during towing and/or pushback processes

**3.10**    **...Intentionally omitted**

**3.11**    **Interior Cleaning**

    3.11.1   a) ...Intentionally omitted
           b) dispose of litter
           c) ...Intentionally omitted
           d) ...Intentionally omitted
           e) ...Intentionally omitted
           f) ...Intentionally omitted
           g) ...Intentionally omitted
    3.11.2   Clean passenger and crew compartments (other than flight deck) (RON Flights only)
    3.11.3   Clean Cabin Windows (RON Flights)
    3.11.4   Clean
           a) cargo compartment (RON Flights)
           b) ...Intentionally omitted
    3.11.5   ...Intentionally omitted
    3.11.6   ...Intentionally omitted
    3.11.7   ...Intentionally omitted
    3.11.8   ...Intentionally omitted
    3.11.9   ...Intentionally omitted
    3.11.10 a) Remove
           b) Destroy food and material left over from incoming flights
    3.11.11 ...Intentionally omitted

**3.12**    **Toilet Service – all turns and RON unless otherwise requested**

    3.12.1   a) Provide
              1) servicing (empty, clean, flush toilets and replenish fluids)
              2) trituator/disposal service
           b) ...Intentionally omitted

**3.13**    **Water Service (as requested)**

    3.13.1   a) Provide or
           b) Arrange for
              1) draining of water tanks
              2) replenishing of water tanks with drinking water
              3) water quality tests

**3.14**    **...Intentionally omitted**

**3.15**    **...Intentionally omitted**

**3.16**    **...Intentionally omitted**

**3.17**    **...Intentionally omitted**

**Section 4**    **Load Control, Communications, and Flight Operations**

**4.1**    **Load Control**

    4.1.1   Convey and deliver flight documents to and from aircraft
    4.1.2   a) Prepare
           b) Sign
           c) Distribute/Forward

**ALLEGIANT000023**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

    d)  Clear/process
    e)  File documents, including but not limited to, load sheets, weight and balance forms, Captain's load information and manifests where Load Control is performed by Allegiant

**4.2    Communications**

4.2.1*  Maintain communications with the following groups during flight operations:
    a)  Allegiant's Dispatch (including Maintenance Control and Crew Scheduling)
    b)  customer operations
    c)  safety and security
    d)  management
    e)  governmental authorities
    f)  airport management
    g)  other airlines
    h)  other parties as directed

4.2.2*  Communicate with flight crew via air-to-ground radio and
    a)  provide and operate a means of communication between the ground station and the aircraft
    b)  complete radio log entries according to Allegiant's procedures
    c)  inform Allegiant's representative of the contents of such messages

**4.3    Flight Operations – General**

4.3.1  Inform Allegiant of any known project affecting the operational services and facilities made available to its aircraft

4.3.2  Suggest the appropriate action to pilot-in-command in case of operational irregularities based on instructions provided by Allegiant

4.3.3*  Provide handling services to Allegiant for
    a)  irregular operations
    b)  other flight operations as directed

4.3.4*  Inform of and provide support to Allegiant in emergency situations

**4.4    Flight Operations — Flight Preparation at the Airport of Departure**

4.4.1  ...Intentionally omitted
4.4.2  Deliver documentation to the aircraft
4.4.3  ...Intentionally omitted
4.4.4  ...Intentionally omitted
4.4.5  ...Intentionally omitted
4.4.6  Contact Allegiant's into-plane fuel provider prior to arrival and provide fuel slip if necessary
4.4.7  Hand out flight operation forms and obtain signature of the pilot-in-command, where applicable
4.4.8  ...Intentionally omitted
4.4.9*  Obtain and file completed fuel slip and complete Allegiant's fuel log

**4.5    Flight Operations — Flight Preparation at a Point Different from the Airport of Departure**

4.5.1  Arrange for the flight release and the weather packet
4.5.2  Analyze operational conditions and request Allegiant for the flight plan

**4.6    ...Intentionally omitted**

**4.7    Flight Operations — Post-flight Activities**

4.7.1  ...Intentionally omitted
4.7.2*  File all appropriate flight documents and complete flight information entries through

**ALLEGIANT000024**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

Allegiant's flight information system

**4.8     …Intentionally omitted**

**4.9     …Intentionally omitted**

**Section 5     …Intentionally omitted**

**Section 6     Support Services**

**6.1     …Intentionally omitted**

**6.2     Automation/Computer Systems**

6.2.1     a) …Intentionally omitted
          b) …Intentionally omitted
          c) Operate equipment to enable access to
               1) Allegiant's system
               2) …Intentionally omitted
               3) …Intentionally omitted

6.2.2     Access the following functions in
          a) Allegiant's system
               1)  training programs
               2)  customer reservations and sales
               3) …Intentionally omitted
               4)  baggage reconciliation
               5)  baggage tracing
               6)  flight following (e.g. aircraft times, passenger count, baggage count, delay
                   information, special service requests)
               7) …Intentionally omitted
               8) …Intentionally omitted
               9) …Intentionally omitted
               10) other functions
          b) …Intentionally omitted
          c) …Intentionally omitted

6.2.3     Manage check-in device(s) including
               1)*  computer
               2)*  bag tag printers
               3)*  boarding pass printers
               4)*  laser printers
               5)*  other items as specified by Allegiant and
          a) Provide or
          b) Arrange
               1)  stock control (i.e. vouchers, bag tags, ticket stock, etc.)
               2)  stock replenishment
               3)  routine maintenance
               4)  servicing and repair
               5)  other duties as specified by Allegiant for check-in device(s)

**6.3     …Intentionally omitted**

**6.4     …Intentionally omitted**

**6.5     Ramp Fuelling/Defueling Operations**

6.5.1     Liaise with ramp fuel suppliers
6.5.2     …Intentionally omitted

**ALLEGIANT000025**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

    6.5.3    …Intentionally omitted
    6.5.4    …Intentionally omitted
    6.5.5    …Intentionally omitted
    6.5.6    …Intentionally omitted
    6.5.7    …Intentionally omitted
    6.5.8    Check and verify with cockpit crew that correct fuel quantity was delivered

**6.6    …Intentionally omitted**

**6.7    Catering Services**

    6.7.1    Liaise with Allegiant's catering supplier
    6.7.2    …Intentionally omitted
    6.7.3*    Transport Allegiant's mail and materials (co-mail) to and from the aircraft (as needed)
    6.7.4*    Ensure the provisioning of ice sufficient to support Allegiant's operation
    6.7.5*    Janitorial Services

**Section 7    Security**

In Accordance with the Aircraft Operator Standard Security Program Chapter 1, Section 1.2 this addendum fulfills the requirement of Allegiant Air to inform our authorized Aircraft Operator representatives of the following security information:

Sensitive Security Information (SSI) is information obtained or developed which, if released publicly, would be detrimental to transportation security. However, SSI may be shared with covered persons with a "need to know." Federal regulation (49 CFR Part 1520.5(b)) defines 16 categories that information must fall under to be protected as SSI as follows: Security Programs and Contingency Plans, Security Directives, Information Circulars, Performance Specifications, Vulnerability Assessments, Security Screening Information, Security Training Materials, Indentifying information of certain security personnel, Critical Infrastructure Asset Information, Systems Security Information, and Confidential Business Information.

Fraud and intentional falsification of records are regulated by 49CFR 1450.103 and 18 USC 1001.

Security responsibilities of the authorized Aircraft Operator Representative as specified in Section 7 of the Standard Ground Handling Agreement are as follows:

**7.1    Customer and Baggage Screening and Reconciliation**

    7.1.1    Comply with current government policies regarding customer and baggage screening and reconciliation
    7.1.2    a) Provide or
            b) Arrange for
                1)    screening of checked baggage
                2)    …Intentionally omitted
                3)    screening of mishandled baggage
                4)    physical examination of checked, transfer and mishandled baggage
                5)    identification of security cleared baggage
    7.1.3    a) Provide or
            b) Arrange for
                1)    screening of customers
                2)    screening of cabin/unchecked baggage
                3)    physical examination of customers and cabin/unchecked baggage
    7.1.4    a) Provide or
            b) Arrange for

**ALLEGIANT000026**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

          1)    identification of customers prior to boarding
          2)    reconciliation of boarded customers with their baggage
          3)    ...Intentionally omitted
          4)    offloading of baggage for customers who fail to board the aircraft

7.1.5*    Take action to prevent theft or unauthorized use of, or damage to Allegiant's pallets, containers, nets, straps, tie-down rings and other material in the custody of the Service Provider. Notify Allegiant immediately of any damage to or loss of such items

**7.2**        **...Intentionally omitted**

**7.3**        **...Intentionally omitted**

**7.4**        **Aircraft**

    7.4.1    a)  Provide or
            b)  Arrange and be responsible for control of access to
                1)    aircraft
                2)    designated areas

    7.4.2    a)  Provide
                1)    search of aircraft
                2)    ...Intentionally omitted
                3)    ...Intentionally omitted
                4)    security of baggage in the baggage make-up area
                5)    Sealing of aircraft (secure and close all doors including baggage compartments) if required
                6)*  completion and retention of applicable security documentation as required
            b)  ...Intentionally omitted

    7.4.3    a)  Provide security personnel
            b)  ...Intentionally omitted
                1)  to safeguard all loads (baggage) during the transport between aircraft and designated locations
                2)  during offloading and loading of aircraft

**7.5**        **Additional Security Services**

    7.5.1    a)  Provide additional security services as needed, or requested by Allegiant
            b)  ...Intentionally omitted

**Section 8**        **...Intentionally omitted**

**Paragraph 2**    **Personnel**

2.01    The personnel which are necessary to perform all functions associated with this agreement for customer processing and ground handling services, shall be provided in accordance with the following list:

Extraordinary Personnel Expenses

Employee Badging and Parking...............................................................................  Service Provider
Employee Uniforms...................................................................................................  Service Provider
Employee Personal Protection Equipment (PPE)....................................................  Service Provider
Employee Drug and Alcohol Testing Program (Approved by FAA)........................  Service Provider
Station Training (Turnover for Initial, Recurrent, Supplemental)..........................  Service Provider
OSHA Training and Courses.....................................................................................  Service Provider

ALLEGIANT000027

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

## Paragraph 3    Facilities, Office Equipment and Ground Service Equipment

3.01 The facilities, office equipment and ground service equipment which are necessary to perform all functions associated with this agreement for customer processing and ground handling services, shall be provided in accordance with the following list:

Facilities (as well as associated maintenance and operating expenses)

| | |
|---|---|
| Ticket Counter(s)............................................................................................. | Carrier |
| ATO................................................................................................................... | Carrier |
| Holdroom and Gate Area(s)............................................................................. | Carrier |
| Carrier Signage................................................................................................. | Carrier |
| Phone/Internet Access...................................................................................... | Carrier |

## Paragraph 4    Leased Equipment

4.01 ...Intentionally omitted

## Paragraph 5    Charges

5.01 For a single ground handling consisting of the arrival and the subsequent departure at agreed timings of the same aircraft, the Service Provider shall provide the following services as per Paragraph 1 – Handling Services at the following rates:

| Flights / Week | Full Turn Flight MD80 | Full Turn Flight B757 |
|---|---|---|
| 2 | $604.00 | $600.00 |
| 4 | $505.00 | $550.00 |

| | |
|---|---|
| Pushback........................................................................................................... | Included |
| Wheelchair Services.......................................................................................... | Included |
| Wheel chairs to be provided by Allegiant | |
| Airstart ( Adhoc ) ............................................................................................. | $41.70/event |
| GPU ( Adhoc ) ................................................................................................... | $51.80/half-hour or fraction thereof |
| Cooling and Heating.......................................................................................... | $54.70/half-hour or fraction thereof |
| Ice and delivery to aircraft................................................................................ | $2.00/10 lb bag |
| Ad Hoc Labor (Regular/Overtime/Holiday) ...................................................... | $25.00/hour |
| Late Operations................................................................................................. | $150.00/hour |

**ALLEGIANT000028**

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

The late fee will not be assessed on flights that are less than one hour late.
After one hour, the late fee will be assessed in quarterly increments, at
$37.50 for every fifteen (15) minutes.

Additional Considerations:

- No additional charges shall apply for services rendered on weekends or holidays.
- The Service Provider shall not charge Allegiant for late operations in the event that the Service Provider does not incur additional costs for the performance of late operation airport services.
- The Charges for Late Operations shall accrue only after one hour after the scheduled departure time of the flight.
- Charges for Late Operations must be approved by a designated representative of Allegiant. Additional Labor must be approved by a designated representative of Allegiant, prior to work being performed when possible.
- Charges for charters, extra sections, diversions and delayed or early arrival flights will be charged at the rates shown above plus overtime charges incurred.
- Flight cancellations will be charged at 70% of the rates herein specified unless twelve (12) hours prior notice is given.
- The rates depicted above are exclusive of airport/terminal/third party fees, charges and/or taxes, including, but not limited to concession and tricherator fees that may be assessed and such fees, charges and/or taxes will be billed separately should they apply
- The rates depicted above do not provide for a change in law, regulation or ruling by any governmental authority materially altering the hours of service, rates of pay or working conditions; or Allegiant changing the service specifications and the Parties agree to diligently and in good faith try to agree on revised rates. Any and all regulatory minimum wage adjustments will be passed through in a rate adjustment.

5.02     ...Intentionally omitted

| Paragraph 6 | Notices |
| --- | --- |

6.01     Whenever any notice or payment is required by this agreement to be made, given, or transmitted to the parties hereto, such notice shall be hand delivered, sent by overnight courier, or enclosed in an envelope with sufficient postage attached to insure delivery and deposited in the United States Mail.

If to Allegiant:

Director Procurement Strategy
Allegiant Air, LLC
8360 S Durango Dr
Las Vegas, NV 89113
Phone:   (702) 508-3371
Fax:      (702) 719-8139
E-mail: Jawaid.shaikh@allegiantair.com

If to the Service Provider:

Airport Terminal Services, Inc
111 Westport Plaza Drive, Suite 400
St Louis, MO 63146
Phone:   (314) 739-1900
Fax:      (314) 739-7280
E-mail:   contractsadministration@atsstl.com

ALLEGIANT000029

ATTACHMENT A.MFE.GH.02 to AGREEMENT for AIRPORT SERVICES – GENERAL TERMS AGREEMENT

---

Signed for and on behalf of

_____ Allegiant Air, LLC _____

by _____ Sean P Hopkins _____

its _____ VP, Contracts & Supply Operations _____

Signature: _____

Signed for and on behalf of

_____ Airport Terminal Services, Inc _____

by _____ Sally A Leible _____

its _____ President & COO _____

Signature: _____

**ALLEGIANT000030**

ALLEGIANT000031



AMENDMENT ATS.MFE.GH.01
to AGREEMENT for AIRPORT SERVICES

1201 North Town Center Dr.
Las Vegas, NV 89144
Phone 702.851.7300
Fax 702.851.7301
www.allegiantair.com

This AMENDMENT ATS.MFE.GH.01 to AGREEMENT FOR AIRPORT SERVICES (this "Amendment") is dated June 1, 2016 (the "Effective Date") and is entered into between Allegiant Air, LLC ("Allegiant" or "Carrier") and Airport Terminal Services, Inc. ("Service Provider").

### WITNESSETH:

WHEREAS, Allegiant and Service Provider have previously entered into that certain (i) General Terms Agreement dated March 2, 2011 (the "GTA") and (ii) Attachment A MFE to the GTA (including any Schedules thereto) dated March 2, 2011 ("Attachment A"), in each case, as amended, modified, and supplemented to date (together, the GTA and Attachment A, the "Agreement"); and

WHEREAS, Allegiant and Service Provider desire to amend the provisions of Attachment A as set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and covenants of the parties set forth herein, and for other good and valuable consideration the adequacy and receipt of which are hereby acknowledged, the parties hereto agree as follows:

1. **Definitions.** Capitalized terms not otherwise defined herein shall have the meanings given to them in the Agreement.

2. **Amendments to Attachment A.** Allegiant and Service Provider hereby agree to amend to add, with effect from the Effective Date, Paragraph 5, section 5.01 of Attachment A as follows:

> For a single ground handling of MD-80 Series/Airbus Single aisle narrow body aircraft (A319/A320) and B757 Aircraft consisting of the arrival and the subsequent departure at agreed timings of the same aircraft, the Service Provider shall provide the following services as per Paragraph 1 – Handling Services at the following rates:
>
> Complete Customer Processing and Ground Handling Services for MD80, A319 and A320
> Per turn rate    (2 Flights/week)............................    $692.22/turn
>     (4 Flights/week)............................    $593.22/turn
>
> Complete Customer Processing and Ground Handling Services for B757
> Per turn rate    (2 Flights/week)............................    $688.22/turn
>     (4 Flights/week)............................    $638.22/turn
>
> Charter (Live In/Ferry Out).................................................................    60% of turn rate
>     (Ferry In/Live Out)...........................................................    100% of turn rate
>
> Pushback.................................................................................................    Included
>
> Wheelchair Services...............................................................................    Included
> Wheelchairs to be provided by Allegiant
>
> Air Start Arrangement (ad hoc)..........................................................    $41.70/event
>
> Ground Power Unit (ad hoc)................................................................    $51.80/half-hour or
>     Fraction thereof

**ALLEGIANT000032**

AMMENDMENT ATS.MFE.GH.01 to AGREEMENT for AIRPORT SERVICES

| | |
|---|---|
| Heating/Air-Conditioning............................................................................ | $54.70/half-hour or Fraction thereof |
| Lavatory Services........................................................................................ | Included |
| Ice and delivery to aircraft........................................................................ | $2.00/10 lb. bag |
| Ad Hoc Labor (Regular/Overtime/Holiday).............................................. | $27.97/hour |
| Late Operations per hour of delayed flights........................................... | $167.82/hour |

The late fee will not be assessed on flights that are less than one hour late.
After one hour, the late fee will be assessed in quarterly increments, at $42 for every fifteen (15) minutes.

Additional Considerations:
- No additional charges shall apply for services rendered on weekends or holidays.
- The Service Provider shall not charge Allegiant for late operations in the event that the Service Provider does not incur additional costs for the performance of late operation airport services.
- The Charges for Late Operations shall accrue only after one hour after the scheduled departure time of the flight.
- Charges for Late Operations must be approved by a designated representative of Allegiant. Additional Labor must be approved by a designated representative of Allegiant, prior to work being performed when possible.
- Charges for charters, extra sections, diversions and delayed or early arrival flights will be charged at the rates shown above plus overtime charges incurred.
- Flight cancellations will be charged at 70% of the rates herein specified unless twelve (12) hours prior notice is given
- The rates depicted above are exclusive of airport/terminal/third party fees, charges and/or taxes, including, but not limited to concession and tricherator fees that may be assessed and such fees, charges and/or taxes will be billed separately should they apply
- The rates depicted above do not provide for a change in law, regulation or ruling by any governmental authority materially altering the hours of service, rates of pay or working conditions; or Allegiant changing the service specifications and the parties agree to diligently and in good faith try to agree on revised rates. Any and all regulatory minimum wage adjustments will be passed through in a rate adjustment.

**3. Effectiveness of this Amendment.** The modifications and amendments to the terms of the Agreement contained in and made by this Amendment shall be effective as of the date hereof.

**4. No Other Modification.** Except as specifically provided herein, all of the terms and conditions of the agreement, including but not limited to, all of Allegiant's and Service Provider's obligations and liabilities set forth therein, remain unmodified and are in full force and effect.  On and after the date hereof, each reference in the Agreement to "this Agreement", "hereunder", "hereof", or words of like import referring to the Agreement shall mean and be a reference to the Agreement as amended by this Amendment.

**5. Miscellaneous.**

**a) Governing Law.** THIS AMENDMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**b) Successors and Assigns.** Subject to the provisions of the Agreement, the terms and provisions of this Amendment shall be binding upon and inure to the benefit of Seller and Buyer and their respective successors and permitted assigns.

**ALLEGIANT000033**

AMMENDMENT ATS.MFE.GH.01 to AGREEMENT for AIRPORT SERVICES

**c) Counterparts.** This Amendment may be executed in counterparts, each of which will constitute one and the same document.

**d) Transaction Costs.** Each party hereto agrees to pay its own costs and expenses incurred in connection with the preparation, execution and delivery of this Amendment and any other documents delivered in connection herewith, including without limitation, the fees, expenses and disbursements of counsel.

**e) Entire Agreement.** This Amendment constitutes the entire agreement of Allegiant and Service Provider concerning the revisions to the Agreement and supersedes and cancels any and all previous negotiations, arrangements, agreements, under standings or letters of interest or intent with respect thereto.

**f) Further Assurances.** Each of Allegiant and Service Provider hereby confirms for the benefit of the other party that it will promptly and duly execute and deliver any such further documents and assurances and take such further actions as the other party hereto may from time to time reasonably request in order to more effectively carry out the intent and purpose of this Amendment.

IN WITNESS WHEREOF, the parties have caused this Amendment ATS.MFE.GH.01 to the Agreement to be executed by their duly authorized representatives as of the Effective Date.

Signed for and on behalf of                                  Signed for and on behalf of

_____Allegiant Air, LLC_____          _____Airport Terminal Services, Inc._____

by _____Jawaid Shaikh_____        by _____Sally A Leible._____

its _____Director Procurement Strategy_____       its _____President_____

Signature: _____        Signature: _____
                                    6/30/16                                              6/22/2016

**ALLEGIANT000034**