UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FILIBERTO J. GARZA MORENO | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7-21-CV-00247 |
| | § | |
| | § | |
| ALLEGIANT TRAVEL COMPANY, | § | |
| ALLEGIANT AIR LLC, AND AIRPORT | § | |
| TERMINAL SERVICES INC. | § | |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES FILIBERTO J. GARZA MORENO, hereinafter referred to as Plaintiff, and files this his Second Amended Original Complaint against ALLEGIANT TRAVEL COMPANY, ALLEGIANT AIR LLC, and AIRPORT TERMINAL SERVICES INC., and for cause of action will show the Court the following:

## DISCOVERY CONTROL PLAN - BY RULE (LEVEL 3)

1. Plaintiff intends to conduct discovery under Level 3 as provided by Rule 190 of the Texas Rules of Civil Procedure.

## CLAIM FOR RELIEF

2. Plaintiff is seeking monetary relief from Defendants in an amount that is more than $1,000,000.00, as provided by Rule 47 of the Texas Rules of Civil Procedure.

PARTIES

3. Plaintiff Filiberto J. Garza Moreno is an individual who resides in Brownsville, Cameron County, Texas.

4. Defendant Allegiant Travel Company, hereinafter referred to as Defendant and Allegiant, is a corporation from Nevada that does business as an airline company in McAllen, Hidalgo County, Texas. Defendant Allegiant Travel Company is the parent company of Defendant Allegiant Air LLC. Defendant Allegiant Travel Company has been served with process and filed an answer in this case.

5. Defendant Allegiant Air LLC, hereinafter referred to as Defendant and Allegiant, is a limited liability company from Nevada that does business as an airline company in McAllen, Hidalgo County, Texas. Defendant Allegiant Air LLC is a subsidiary of Defendant Allegiant Travel Company. Defendant Allegiant Air LLC has been served with process and filed an answer in this case.

6. Defendant Allegiant Travel Company and Defendant Allegiant Air LLC will both hereinafter be referred to as Allegiant.

7. Defendant Airport Terminal Services Inc., hereinafter referred to as Defendant and ATS, is a corporation from Missouri that does business in McAllen, Hidalgo County, Texas. Allegiant contracts Defendant Airport Terminal Services Inc. to perform services at the McAllen Miller International Airport which include tarmac services, baggage handling, customer services, boarding handicap passengers and seating them on Allegiant's airplanes, and other services. Defendant Airport Terminal Services Inc. has been served with process and filed

an answer in this case.

## VENUE AND JURISDICTION

8. The incident described hereinbelow or events giving rise to Plaintiff's claim against Defendants arose in McAllen, Hidalgo County, Texas. Venue for this cause of action therefore lies in Hidalgo County, Texas.

9. Plaintiff filed his original petition in the 275th District Court in Edinburg, Hidalgo County, Texas. Defendants removed this case to the United States District Court, Southern District of Texas, McAllen Division, based on diversity of citizenship of the parties. Plaintiff is a resident of Texas, the Allegiant Defendants are incorporated and have their principal places of business in Nevada, and ATS is incorporated and has its principal place business in Missouri. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction for this cause of action in accordance with 28 U.S. Code §1332.

## FACTS

10. On or about June 3, 2019, Plaintiff purchased an airline ticket from Allegiant to fly from McAllen Texas to Las Vegas Nevada on June 13, 2019. Plaintiff is a quadriplegic and disabled. When Plaintiff purchased a ticket from Allegiant online through Allegiant's website, Plaintiff made Allegiant aware of his quadriplegic condition, disability, and need for assistance when boarding the airplane and being placed in a seat on the airplane at the McAllen Miller International Airport. Further, on June 13, 2019, when Plaintiff arrived at the McAllen Miller International Airport to fly to Las Vegas, checked in at the ticket

counter, and waited at the gate to board the airplane, Defendants were made aware of Plaintiff's quadriplegic condition, disability, and need for assistance with boarding the airplane and being placed in seat on the airplane. Before Defendants boarded Plaintiff on the airplane, Allegiant assured Plaintiff that it would provide Plaintiff with the proper assistance with boarding the airplane and being placed in a seat on the airplane.

11. When it was time for Plaintiff to board the airplane, Defendants placed Plaintiff in an aisle wheelchair and pushed him into the airplane to a seat at the front of the airplane near the doorway. The seat had fixed armrests that were made of aluminum or steel that were not adjustable and did not move up and down. Plaintiff took a portable Hoyer Lift (Lift) to the airport so it could be used to board him on the airplane. Plaintiff's family members and providers used the Lift to lift and transfer Plaintiff to and from his wheelchair with a nylon or polyester sling that was part of the Lift. Defendants requested that two men who were loading luggage into the airplane on the tarmac transfer Plaintiff from the aisle wheelchair to a seat on the airplane. The men had no education, training, qualifications, or experience in transferring a quadriplegic from an aisle wheelchair to a seat on the airplane. The sling of Plaintiff's Lift was underneath Plaintiff's body as he sat on the aisle wheelchair. Plaintiff requested that Defendants use his Lift to transfer him to a seat of the airplane. Defendants refused to use the Lift and insisted that the two baggage handlers, Plaintiff's adult brother, and his elderly father use the sling to manually transfer Plaintiff from the aisle wheelchair to a seat on the airplane. When they lifted Plaintiff from the aisle wheelchair and transferred Plaintiff to a

seat using the sling, one of the baggage handlers let go of the sling, causing Plaintiff to fall and Plaintiff's buttocks, right hip, and/or body to land on and hit the armrest of a chair, causing Plaintiff's buttocks, right hip, and right leg to severely dislocate. Defendants should have used Plaintiff's portable Hoyer Lift, an Eagle Passenger Lifter or Hoist, or some other lift and transfer device to transfer Plaintiff properly and safely from the aisle wheelchair to a seat on the airplane, but they failed to do so knowing there was a substantial risk that Plaintiff would get injured when he was manually transferred to a seat on the airplane with the sling. Defendants never offered or suggested using a lift and transfer device to transfer Plaintiff from the aisle wheelchair to a seat on the airplane. Defendants did not have a lift and transfer device available to use at the airport or on the airplane. Defendants waited too long to board Plaintiff on the airplane before the departure time and were in a rush to board him on the airplane. The jet bridge was packed with passengers anxiously waiting to board the airplane to fly to Las Vegas as Defendants boarded Plaintiff on the airplane and dropped him. Allegiant's employees who were working in the airplane when Plaintiff was being boarded on the airplane simply watched Plaintiff being manually transferred to a seat on the airplane and provided no assistance to the baggage handlers and Plaintiff's brother and father who had no legal obligation or responsibility to board Plaintiff on the airplane and transfer Plaintiff to a seat on the airplane.

12. Plaintiff was 37 years of age and a diabetic when the incident occurred. As a result of the incident, his buttocks, right hip, right leg, right foot and/or body were severely dislocated and deformed. His right hip, leg, and foot are positioned

several inches higher than his left hip, leg, and foot. His body has shifted and is crooked, uneven, and unbalanced. As a result of these physical deformities, Plaintiff developed several large stage-4 pressure ulcers on his lower back, buttocks, rectum, scrotum, testicles, hips, and upper legs which have caused infection, swelling, secretions of puss, craters, loss of flesh, and loss of muscle in said areas of his body. Soon after the incident, the ulcers developed on Plaintiff's body, and still have not healed or improved 3 years later. Plaintiff spent approximately 4 months in a hospital and nursing home receiving wound care for the ulcers. Since leaving the nursing home, he has received wound care for the ulcers at his house for 3 hours each day, with his buttocks, rectum, testicles, and scrotum exposed to his aunt and mother who are his home health providers and medical providers who also provide him with wound care, causing Plaintiff a great deal of humiliation and embarrassment. The ulcers have caused Plaintiff to suffer pain, discomfort, sweating, dehydration, headaches, thirst, and other symptoms and conditions.

<u>CAUSE OF ACTION BASED ON NEGLIGENCE-HIGH DEGREE OF CARE OF A COMMON CARRIER AND PROXIMATE CAUSE</u>

13. At the time that is material to the incident described hereinabove and this case, Defendants were performing services as a common carrier. Defendants had a legal duty to perform these services with a high degree of care, but failed to do so by committing the following acts and/or omissions:

      A. In failing to have educated, trained, qualified, and experienced individuals available at the airport to transfer Plaintiff, a quadriplegic, properly and safely from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person

would have done under the same or similar circumstances,

B. In requiring and/or allowing two unqualified baggage handlers and Plaintiff's brother and father who were not educated, trained, qualified, and experienced to manually use the sling of Plaintiff's Hoyer Lift to transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

C. In using the sling of Plaintiff's Hoyer Lift to manually transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

D. In failing to use a lift and/or transfer hoist, like Plaintiff's portable Hoyer Lift or a Passenger Eagle Lifter or Hoist, to transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would have done under the same or similar circumstances,

E. In failing to provide Plaintiff with a seat on the airplane that had armrests that moved up and down (adjustable arm rests), as a very cautious, competent, and prudent person would have done under the same or similar circumstances,

F. In manually transferring Plaintiff over a seat on the airplane that had stationary aluminum or steel armrests, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

G. In Defendants' baggage handler letting go or releasing the sling of Plaintiff's portable Hoyer Lift and allowing Plaintiff to fall and his body to hit or make contact with the aluminum or steel armrest of a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

H. In allowing Plaintiff's body to fall and hit or make contact with the aluminum or steel armrest of a seat on the airplane as he was transferred from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

I. In allowing and/or requiring Plaintiff's brother and father who were unqualified to assist Defendants with transferring Plaintiff from the aisle wheelchair to a seat on the airplane, as a very cautious,

competent, and prudent person would not have done under the same or similar circumstances,

J.  In Allegiant selling a ticket to Plaintiff to fly to Las Vegas without having educated, trained, qualified, and experienced individuals and the proper lift and transfer equipment available to transfer Plaintiff properly and safely from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances,

K.  In allowing Plaintiff to board the airplane without having educated, trained, qualified, and experienced individuals and the proper lift and transfer equipment available to transfer Plaintiff properly and safely from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would not have done under the same or similar circumstances, and/or

L.  In Allegiant's employees failing to provide Plaintiff with assistance in boarding the airplane and being transferred from the aisle wheelchair to a seat on the airplane, as a very cautious, competent, and prudent person would have done under the same or similar circumstances.

These acts and/or omissions by Defendants, taken either singularly or in combination, one with other or others, constitute negligence, which negligence was the sole proximate cause or a proximate cause of the incident described hereinabove and of the injuries and damages suffered by Plaintiff, as set out herein.

## ALTERNATIVE CAUSE OF ACTION BASED ON COMMON LAW NEGLIGENCE AND PROXIMATE CAUSE

14. At the time that is material to the incident described hereinabove and this case, Defendants were negligent by committing the following acts and/or omissions:

A.  In failing to have educated, trained, qualified, and experienced individuals available at the airport to transfer Plaintiff, a quadriplegic, properly and safely from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would have done under the same or similar circumstances,

B. In requiring and/or allowing two unqualified baggage handlers and Plaintiff's brother and father who were not educated, trained, qualified, and experienced to manually use the sling of Plaintiff's Hoyer Lift to transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

C. In using the sling of Plaintiff's Hoyer Lift to manually transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

D. In failing to use a lift and/or transfer hoist, like Plaintiff's portable Hoyer Lift or a Passenger Eagle Lifter or Hoist, to transfer Plaintiff from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would have done under the same or similar circumstances,

E. In failing to provide Plaintiff with a seat on the airplane that had armrests that moved up and down (adjustable arm rests), as a person of ordinary prudence would have done under the same or similar circumstances,

F. In manually transferring Plaintiff over a seat on the airplane that had stationary aluminum or steel armrests, as a person of ordinary prudence would not have done under the same or similar circumstances,

G. In Defendants' baggage handler letting go or releasing the sling of Plaintiff's portable Hoyer Lift and allowing Plaintiff to fall and his body to hit or make contact with the aluminum or steel armrest of a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

H. In allowing Plaintiff's body to fall and hit or make contact with the aluminum or steel armrest of a seat on the airplane as he was transferred from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

I. In allowing and/or requiring Plaintiff's brother and father who were unqualified to assist Defendants with transferring Plaintiff from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

J. In Allegiant selling a ticket to Plaintiff to fly to Las Vegas without having educated, trained, qualified, and experienced individuals and the proper lift and transfer equipment available to transfer Plaintiff properly and safely from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

K. In allowing Plaintiff to board the airplane without having educated, trained, qualified, and experienced individuals and the proper lift and transfer equipment available to transfer Plaintiff properly and safely from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would not have done under the same or similar circumstances,

L. In Allegiant's employees failing to provide Plaintiff with assistance in boarding the airplane and being transferred from the aisle wheelchair to a seat on the airplane, as a person of ordinary prudence would have done under the same or similar circumstances,

These acts and/or omissions by Defendants, taken either singularly or in combination, one with other or others, constitute negligence, which negligence was the sole proximate cause or a proximate cause of the incident described hereinabove and the injuries and damages suffered by Plaintiff, as set out herein.

### DAMAGES

15. As a proximate cause of the negligence of Defendants in causing the incident described hereinabove, Plaintiff suffered injuries, suffered aggravating injuries to preexisting conditions, suffered physical pain and mental anguish in the past, will suffer physical pain and mental anguish in the future, suffered physical impairment in the past, will suffer physical impairment in the future, suffered physical disfigurement in the past, will suffer physical disfigurement in the future, incurred medical expenses for medical care and services in the past in the amount of $300,000.00, and will incur medical expenses for medical care and

services in the future in the amount of $1,200,000.00. Plaintiff is seeking monetary relief from Defendants in an amount that is more than $1,000,000.00, as compensation for his damages.

VICARIOUS LIABILITY

16. At the time that is material to the incident described hereinabove and this case, Defendants' principals, vice-principals, managers, supervisors, employees, contractors, and/or agents, including ATS as it pertains to Allegiant, acted within the course, scope, and authority of their ownership, managerial, supervisorial, employment, contractual, and/or agency relationship with Defendants. Defendants should therefore be held vicariously liable to Plaintiff for all of Plaintiff's damages alleged herein.

JOINT AND SEVERAL LIABILITY

17. Plaintiff requests that Defendants be held jointly and severally liable to Plaintiff for of all of Plaintiff's damages alleged herein.

PREJUDGMENT AND POST-JUDGMENT INTEREST

18. Plaintiff further sues Defendants herein for prejudgment interest at the maximum rate allowed by law on those damages where such interest may be assessed and for post-judgment interest at the maximum rate allowed by law on all of Plaintiff's damages alleged herein, from the date of judgment until the judgment is paid in full.

## REQUEST FOR JURY TRIAL AND JURY FEE

19. Plaintiff requests that the above-styled and numbered cause be tried to a jury and represents to the Court that the proper jury fee was paid to the Hidalgo County District Clerk with the filing of Plaintiff's Original Petition in the 275th District Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, he have judgment against Defendants for all of his damages alleged herein, for prejudgment and post-judgment interest, and for any and all other relief, both general and special, in law and in equity, and for all costs of Court on his behalf expended.

Respectfully Submitted,

THE CISNEROS LAW FIRM, L.L.P.
312 Lindberg
McAllen, Texas 78501
Telephone No. (956) 682-1883
Fax No. (956) 682-0132
Email: email@cisneroslawfirm.com


/s/    *Michael J. Cisneros*
MICHAEL J. CISNEROS
State Bar No. 00793509
Southern District Bar No.: 19522
ARTURO CISNEROS
State Bar No. 00789224
Southern District Bar No.: 19521
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Michael J. Cisneros, hereby certify that on this _____ day of

_____, 2022, a true and correct copy of Plaintiff's Second Amended

Original Complaint was sent to counsel for Defendants via electronic mail.


_/s/___*Michael J. Cisneros*_____
MICHAEL J. CISNEROS